DISTRICT COURT OF THE UNITED STATES
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

Civ. ***No. 05-1O15 (FB)***

Plaintiffs.

**PETITIONER'S MEMORANDUM IN SUPPORT OF HIS REPLY & RETURN TO RESPONDENT'S OPPOSITION**

vs.

**Julius R. Nasso**

Defendants.

---

Petitioner, appearing pro se respectfully asks the Court to allow the filing of his memorandum in support of his return to the Government' s Return to the Court's Order to Show Cause, and this pending 28 U.S.C. $ 2255 proceeding.

Petitioner incorporates the supporting affidavit and his motion to expand the record, and motion for reinstatement of his prior personal Recognizance.

RECEIVED
APR 21 2005
PRO SE OFFICE

What petitioner is asking is reasonable.  That is a change of the sentence to home confinement for the remainder of the term.

In this way the plea contract can remain in tact and "enforced" while at the same time removing the clear and present danger to the Petitioner.   None of the harm suffered and the lack of a timely or adequate administrative remedy could have been contemplated by the parties or the Court at sentencing in February of 2004.  That is, Petitioner respectfully reminds the Court that FCI Staff's medical negligence nearly killed him. Other records indicate he suffered a stroke that partially paralyzed him.   This stroke went undiagnosed for more than three months after it occurred at FCI Elkton.  This can be construed as per se a good reason to consider and Sustain the request in part at this time.

The Government will suffer no prejudice by the granting of interim relief pending the final determination of this  2255 motion.

Petitioner reminds the Court that he will actually serve less than one year, which may trigger other constitutional concerns.  The BOP has awarded about 54 days of Good time Credit.  The expected release date July 3, 2005. Irreparable prejudice could result because the sentence will probably be served prior to an adjudication or before an evidentiary hearing on the merits.

The rational behind the claim is that absent some form of relief, (bail, or a change of "place" of his confinement) he will suffer irreparable harm, should he prove his factual or actual innocence.

Defendant does not quarrel with the Government's assertions that he plead guilty based upon a Plea contract.

He points out that because of events occurring ***after,*** the plea and sentence. There is *cause and prejudice* that give rise to this application. Subsequent discovery may prove material perjury was used to obtain his indictment. The relief requested which will maintain the letter and integrity of the Rule 11 plea agreement and will allow Petitioner to attend to his medical needs or other compliance with the Court's order regarding his mental health treatment which he is not receiving at FCI Elkton.

Additionally, the record can be expanded to include the evidence regarding maintenance of erroneous BOP Records. There has been exhaustion contrary to Respondents assertions of the affirmative defense of lack of exhaustion. Petitioner's medical needs also indicate there is no timely or adequate administrative remedy. The Court has the authority to expand the record, and can judicially review the same.

See for example, the duty imposed under federal Regulations that require the conclusion of the administrative remedy process within 180 days. Petitioners administrative remedies attempts now exceed 200

days with no relief or correction in direct contravention of this court's findings and conclusions at sentencing. See ***Tellier v. Fields*** 230 F.3d 2nd Cir. 2000). Federal Regulations concerning 180 day conclusion of administrative remedy process is not ""discretionary".

***AS GROUNDS FOR THE GRANTING OF THIS ACTION, PETITIONER WOULD REPRESENT AS FOLLOWS; BUT NOT EXPRESSLY LIMITED THERETO:***

1. On March 1, 2005, this Court directed the Government to essentially show cause as to why relief requested should not be granted.

2. The response or return to the application was filed by the government on March 25, 2005.

3. The Government claimed inter alia as follows; but not expressly limited thereto;

a. That petitioner filed a "petition for a writ habeas corpus" pursuant to 28 U.S.C. $ 2255, and that he is currently confined at the Federal Correctional Institution, (FCI) at Elkton, Ohio.

b. That in May of 2002, a federal grand jury in the Eastern District of New York returned an indictment against Petitioner and numerous others.

c. On August 13, 2003, Petitioner allocated and entered a guilty plea as advised by counsel, and pursuant to a plea agreement with the government. The plea contract stipulated to a sentence of 12 months and one day liberty deprivation pursuant to Rule 11(c)(1)(C).

d. On February 17, 2004, the District Court accepted the petitioner's guilty plea and that petitioner was sentenced pursuant to the agreement.

e. The Judgment of conviction in this cause was entered on February 25, 2004, and no appeal was taken by the Defendant or the Government. After sentencing and while at prison, the Bureau of Prisons disregarded and ignored this Court's conclusions and findings and listed Petitioner as an Organized Crime associate, and listed him as a "CIMS" prisoner. They have been requested to correct this error and have refused to do so.

f. The Government asserts that the Petitioner's claims are **(1)** ***"procedurally defaulted"***, and therefore, (e.g., he cannot obtain a resentencing to home confinement by the Court. **(*)** and that:

**(*)**It is unclear from the return if petitioner were to prove Steven Segal's multiple acts of material perjury, which resulted in petitioners indictment and subsequent conviction what remedy would be available. Moreover, it is believed that if petitioner were to prove his actual or establish his factual innocence, it seems that respondent would allege a procedural default or some other procedural bar. This matter is entirely unaddressed by the Government's return. Apparently, $ 2255 relief as construed by the Government is entirely inadequate even if factual innocence is capable of being proven and/or known to the government. Therefore, relief might or could be afforded under, but not limited to, 18 USC $ 3582(c)(2). This may be applied at the discretion of the Court notwithstanding counsel's puzzlement... Further, these issues, use of erroneous records, and misreading of law severing the unconstitutional provisions of the Sentencing Reform Act, could and does allow the Court to consider home confinement for the remainder of the term because of the abuse, and because it ***could have*** imposed a one year and one day sentenced of home confinement thereby keeping the letter of the plea agreement in tact.

**(2)** The Supreme Court's decision declaring that certain provisions of the Sentencing Reform Act of 1984, is facially repugnant, is likewise procedurally barred. That is, Petitioner's right of review by this Court or it' s ability to consider the imposition of the same sentence of one year to home confinement is abridged, or unavailable even if the Court was unaware of the repugnancy of the Act or statute. Ostensibly, this bar is because ,,,"habeas review..." will not be allowed to do service for an appeal," as claimed, Id @ page 11 of Return; and, **(3),** claims of prisoner abuse, by and through misconduct, systematic delaying tactics, along with inhumane treatment is also not reviewable. The bald conclusion is that this Court can do nothing about violations. This is believed to be a mistatement of the law. There are violations of the Court's order which may constitute a contempt. Moreover, there are violations of federal Regulations and Treaties governing Federal officials and matters pertaining to apparent and willful failure to correct erroneous records and perhaps unlawful disclosures. All of this is said to be *"unripe"* because of a purported lack of exhaustion. Therefore, any potential remedy available to Movant is also to be abridged because the Court again must stay it's hand and is deprived of the authority to review petitioner's exhausted administrative claims.

4.     The Government further suggests in a footnote, that the "conditions of confinement" claims are purportedly *only* reviewable under a  28 U.S.C. $ 2241 petition.  (id page 18 note 7.)  However, the conditions of confinement implicate this Court's original order.  The denial of timely or proper medical treatment is suggested to be a specie or type of contempt federal regulations governing the federal officials, and the spirit and intent of the Courts findings,  sentencing Judgment. This contempt is suggested to be reviewable by this Court now.  Prison officials are using erroneous records contrary to what this Court found ) to deny his Previously approved Community Corrections Center (CCC) placement.  The apparent basis for the deprivation of the CCC apparently is because of BOP records alleging connections or involvement with organized crime. Please see administrative records showing Petitioner's objections to the records, and the requirements of ***Sellers v. BOP*** 959 F 2d 307 (D.C. Cir. (1987).Accord, Title 5 U.S.C. $$ 701-706, et seq., with $ 703, specifically allowing review by issuance of ""habeas Corpus."  The government suggestions will requiring protracted and time consuming judicial proceedings.   This suggestion by the government is contrary to the notions of judicial economy, and indicates prima facie that the Government is confessing that there is a *lack of a timely and adequate remedy for this Petitioner.*

Judicial notice of this submission of a lack of a timely or adequate remedy is requested.

5. Petitioner respectfully reminds the Court that it specifically instructed Petitioner to renew the administrative claims after he exhausted. That exhaustion is now complete by operation of the Federal Regulations requiring resolution within 180 days from the commencement of the grievance.

6. In support of his claim or evidence of materially false testimony, Petitioner offers additional information for the Court's consideration. The Memorandum and Order of Judge Maltese issued on September 26, 2002. ***It is Exhibit "A".*** This Information is suggested to be judicially noticeable under the rules of evidence. It is further believed to be believed admissible. It is supported by affidavits the Court may consider, and rebuts government's claims or offers of trial testimony by Steven Seagal. (i.e., evidence of Seagal's Material perjury). This order shows Nasso's allegations verify a 12 year history of Petitioner loaning Seagal Money. There is an outstanding loan of $ 500,000.00 to Steven Seagal, Production of the "accountant(s) who Mr. Seagal says informed him that, in fact, petitioner owed Seagal money..."is necessary because there are disputed factual issues.

The Government offered the following testimony of Seagal:

***Segal's accountants informed him that, in fact, petitioner owed Seagal Money. (T 2935***). ( Id at page 3 & 4 Return)

7. The facts as stated by affidavit indicate there may be and probably is a promissory note showing the loan is outstanding at this time, contrary to and rebutting the offered testimony.
The facts further indicate Petitioner loaned Seagal at least 3.2 million dollars over a span of 12 years. The testimony offered by the Government appears to be false.

8. A hearing is suggested and perhaps necessary to necessary to resolve these (and other) disputed issues of fact. The testimony of the witnesses, and *these accountants* among numerous others is necessary to insure justice.

9. On May 28, 2004, a Civil Action No. BC 316318, was filed in California State court. This Complaint is attached as **Exhibit "B".** This complaint named Mr. Anthony Pellicano, and others. If leave for discovery is allowed the records and information will show or elicit facts showing Mr., Seagal is also tied to and connected to Mr. Pellicano. Mr. Pellicano is believed to be facing additional federal charges. The Federal Government or state authorities are also believed to have information, and tape recordings that were illegally intercepted by

Pellicano and others.   This information could very well constitute Brady

or Jenks material which was withheld or has recently been discovered by

authorities.   It can be reviewed in camera as well.

10.    Petitioner requests leave for discovery, through production

requests to the government and/or to allow him to  present

interrogatories.

11.    The Court has discretion to allow a party to propound

written interrogatories to the United States Attorneys, and other potential

witnesses.  Discovery provisions of Federal Rules of Civil Procedure are

not applicable to habeas corpus proceedings.  ***Harris v. Nelson,*** 394

U.S.  309 (1069) The District Court may arrange discovery in an

appropriate case and establish procedures to allow development, for

of facts for purposes of a hearing.

12.    Petitioner asserts that these records and information is

necessary and imperative to insure justice.

13.    The Court is requested order production of documents

relative to the Government's investigation of Mr. Pellicano, and to

disclose to the Court it's possession of evidentiary material and that this

Court review the same in camera to determine whether disclosure is

appropriate to this Petitioner.

14.    This evidence and discovery is believed to  include tape recordings and other records which have been, or is being suppressed or withheld because the government is contemplating filing charges, or is conducting other grand jury proceedings and is using Pellicano's illegally tape recorded records and conversations to obtain other indictments. Petitioner  has reason to believe that his phone was illegally tapped by Mr. Pellicano.   The government may have this information.

15     There is a need for a hearing in this matter on the disputed facts and live testimony  needs to be taken taken to establish that the issues of the petitioner have a full ventilation and for consideration by the Court.  The previous filings are adopted by reference  as if they were set forth in their particularity herein for consideration by this Court including the administrative remedy applications that are now ripe for review.

16.    The government does not dispute that when he was sentenced the Court was unaware of it's discretion to sentence him to probation or to home confinement.  The Court can further keep the effect of the plea agreement in tact by changing the place of confinement. Furthermore, the Government will suffer no prejudice by the granting of his request.

17.    The force and conclusiveness of the sentence and the abridgment of the right of modification of it is also premised upon the Government's submission that the Court, (at the time of sentencing) could not impose such a sentence.  Now it can but the government asserts that there is or was a procedural "default" for failure to file an appeal.  The Government's claim that Petitioner may not obtain the benefits of the review or reconsideration of the sentence is suggested to be inapplicable.

18.    The reason for this inapplicability is because of the lack of validity of the presumption upon which the court relied when the sentence was imposed.

19.    Normally, the presumption of constitutionality afforded to legislation is strong.  See ***U.S. v. National Treasury Employees Union***, 513 U.S.  454 (1995).  However this presumption is a heavy one it is not absolutely conclusive, as suggested by the Government and may be rebutted.  See ***Borden's Farm Products Co. v. Baldwin***, 293 U.S. 194 (1934). The ultimate determination of the constitutionality of any act of the legislature rests with the Courts not the executive.  The court has spoken in the matter.

20. Petitioner has no other adequate remedy at law. He believes the Government claims of a procedural bar may be impeached by the effect of ***Massero v. United States***, 538 U.S. 500, (2003), and by the authorities of ***Glover v.U.S.*** 531 U.S. 198 (2001). And the record showing counsel asked for the sentence of home confinement or probation with the Presentence Report to have stated he was a prime candidate for such home confinement.

21. There is a need for de novo hearing in that matter with live testimony to be taken. Petitioner resuests that he be allowed to fully develop the facts demonstrating that he is entitled to relief and aks the Court to allow and provide the necessary facilities and procedures for an adequate inquiry. The discovery is necessary for the expansion of the record to include the record of Petitioner's exhaustion, and other material relevant to the determination of the merits.

Conclusion

The court is requested to liberally construe his pleadings and grant the relief requested, or fashion some remedy to prevent irreparable harm.

Dated April 15, 2005

Respectfully presented,

Julius R. Nasso

Julius R. Nasso, No. 67923-053
FCI Elkton P.O. Box 10 DB
Lisbon, Ohio 44432

Verification

I, the undersigned, swear under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. This affirmation was made at FCI Elkton, Ohio, and was executed on this 15th day of April, 2005.

Julius R. Nasso

EXHIBIT A

EXHIBIT A

# EXHIBIT A TO HALL AFFIDAVIT - DECISION AND ORDER OF THE HONORABLE JOSEPH J. MALTESE, DATED SEPTEMBER 26, 2002 [54-69]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND PART DCM 3

Index No.: 10940/02
Motion Nos.: 1 & 2

JULIUS R. NASSO, individually and derivatively as a shareholder of SEAGAL-NASSO PRODUCTIONS, INC., SEAGAL-NASSO DISTRIBUTION LLC, and SEAGAL-NASSO FILMS, INC.,

*Plaintiffs*

against

STEVEN SEAGAL, STEAMROLLER PRODUCTIONS, INC.,

*Defendants*

DECISION & ORDER
HON. JOSEPH J. MALTESE

The following items were considered in the review of this (1) motion to dismiss and (2) motion for an issuance of an open commission to take a deposition.

| Papers | Numbered |
|---|---|
| Notice of Motion and Affidavits Annexed | 1, 16 |
| Answering Affidavits | 5, 8 - 15 |
| Replying Affidavits | 4 |
| Memoranda of Law | 2, 3, 6, 7, 17 - 18 |
| Exhibits | Attached to Papers |

Upon the foregoing cited papers, the Decision and Order on these Motions is as follows:

The defendants Steven Seagal (Seagal) and Steamroller Productions, Inc. (Steamroller) have made a motion to dismiss this lawsuit on the grounds that this court does not have jurisdiction over them. The defendants also claim that the alleged agreements between the plaintiffs, Julius Nasso, et. al., and them do not constitute contracts and therefore cannot constitute causes of action for breach of contract or breach of any fiduciary relationship. In the second motion, the plaintiffs request an open commission to take the deposition of Robert Haralbedian, a certified public accountant in California, who has been employed by both the plaintiffs and the defendants.

55

## Facts

The plaintiff, Julius Nasso, is a Doctor of Pharmacology and a movie producer who, during all of the relevant periods of time up to the present, has resided in Staten Island, New York. Julius Nasso and the defendant, actor Steven Seagal, are both 50% shareholders of both Seagal-Nasso Productions, Inc. (Seagal-Nasso Productions), a New York corporation and Seagal-Nasso Films, Inc. (Seagal-Nasso Films), a California corporation. The corporate records of Seagal-Nasso Distribution disclose that at a shareholders meeting which was held on July 12, 1990, Seagal was chosen to be the chairman and Nasso the secretary: "to take all steps necessary to complete the organization of the corporation and to enable it to commence business." However, the records of the New York Department of State, Division of Corporations discloses that Julius Nasso is the Chairman or Chief Executive Officer. Seagal-Nasso Distribution (Co.) LLC (Seagal-Nasso Distribution) was a Nevada limited liability company which was adopted on September 8, 1998 by Seagal-Nasso Films, Inc. as the sole member of the company. Seagal-Nasso Distribution was dissolved on October 29, 2001.

During 1997 to 1999 when the alleged agreements and breach of those agreements took place, Steven Seagal was a resident of Staten Island, New York and was the neighbor of the plaintiff, Julius Nasso. In March of 2000, Steven Seagal sold his Staten Island home to Nasso and moved to California. Steven Seagal is the sole shareholder and an employee of Steamroller Productions, Inc., (Steamroller) a California corporation known as a "loan-out company" which "loans out" Seagal to provide acting services to various motion picture endeavors.[1] Steamroller was incorporated while Seagal was still a resident of New York. The plaintiff maintains that Steamroller is indistinguishable from Seagal as an individual.[2] The defendant states that there is no jurisdiction over Seagal as he

---

[1] A "loan-out company" is used as a tax savings device and is typically a sub-chapter S type corporation where the income to the corporation is passed through directly to the shareholder-performer. (*See generally, Home Box Office, Inc., v. Directors Guild of America, Inc.*, 531 F.Supp. 578, 597 [USDC SDNY 1982]).

[2] In the entertainment industry it is common for an actor's name to appear on a billing without the name of the loan out company disclosed. The advertisements submitted to this court contain Seagal's name, photo and the film titles in which he was to act.

Seagal did not perform the services as delineated and another actor, Harvey Keitel, performed his role for $300,000 more than Seagal was to be paid. Nasso asserts that the bills for damages and refunds for that project which Seagal cancelled were handled by Seagal-Nasso Productions until January 1 of 2000.

While not part of this lawsuit, to buttress Nasso's argument of his close prior dealings with Seagal, Nasso alleges that over the course of 12 years he provided $3,200,000 in bridge loans to Seagal. On February 19, 1997, Universal Marine Medical Supply Inc., a company owned by Nasso loaned $500,000 to Seagal. A promissory note memorialized this loan with stipulated interest at the rate of 6% was paid by Seagal in full on November 12, 1997. Nasso alleges that there is an additional outstanding loan of $500,000 which he lent to Seagal on October 15, 1999 to assist in Seagal's tax payments.

The defense has presented this court with information that Nasso has been indicted on two counts of conspiracy to commit extortion and attempted extortion in violation of 18 U.S.C. § 1951 for allegedly extorting Seagal. That criminal prosecution entitled *United States of America v. Peter Gotti, et al*, Cr. (No. 02CR606 [FB]) is pending in the United States District Court for the Eastern District of New York. Inasmuch as that case is still pending and no other admissible evidence other than the charges have been presented to this court, that criminal prosecution will proceed in the U.S. District Court. When and if there is a conviction or an acquittal for which this court may take formal judicial notice, or when admissible evidence is presented to this court, then this court will deal with that issue – until that time – the presentation of those charges in this court is premature for consideration.

69

ORDERED, that the parties shall comply with the discovery dates as outlined in the preliminary conference order of August 9, 2002 except that counsel shall appear for a status conference on February 4, 2003 at 11:00 AM. and not February 11, 2002 as per the Preliminary Conference order or sooner upon request by either counsel to this court.

ENTER,

DATED: September 26, 2002

Joseph J. Maltese
Justice of the Supreme Court

EXHIBIT B

EXHIBIT B

GERAGOS & GERAGOS
MATTHEW J. GERAGOS SBN 153390
SHELLEY KAUFMAN SBN 100696
350 S. Grand Avenue, 39th Floor
Los Angeles, CA 90071-3480
Telephone: (213) 625-3900
Facsimile: (213) 615-1600

KABATECK & GARRIS
BRIAN S. KABATECK SBN 152054
350 S. Grand Ave., 39th Floor
Los Angeles, CA 90071-3480
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Attorneys for Plaintiff ANITA BUSCH

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court
MAY 28 2004
John A. Clarke, Executive Officer/Clerk
By ____________ Deputy
SUE GABB

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

ANITA BUSCH,

Plaintiff,

vs.

ANTHONY PELLICANO; ALEXANDER PROCTOR; MARK ARNESON; CITY OF LOS ANGELES; SBC TELECOMMUNICATIONS, INC., formerly operating as Pacific Bell Telephone Company, a corporation; CLIENT DOE; LAW FIRM DOE; and DOES 1 through 100, inclusive,

Defendants.

Case No. BC316318

Complaint for:

1. Intentional Infliction of Emotiona Distress
2. Assault
3. Invasion of Privacy
4. Violation of Statute - Penal Code §§632 and 637.2
5. Violation of California Business & Profession §17200
6. Negligence
7. Negligence

Demand for Jury Trial

Plaintiff alleges:

**INTRODUCTION**

1. This case involves a well-known journalist who was working on high profile stories regarding various business dealings of several entertainment figures. Threats and assaults on Plaintiff's life traumatized her and brought her illustrious career to a halt. Behind these threats and attacks is the well known private investigator Anthony Pellicano, along with his clients, and a ring of co-conspirators, including Mark Arnenson, a twenty-nine year

veteran of the Los Angeles Police Department Robbery/Homicide division, who wer directing and leading the plan of attack.

## THE PARTIES

2. Plaintiff ANITA BUSCH is a resident of the County of Los Angeles, State o California. At all times herein mentioned, Plaintiff was a journalist, who was writing investigating and reporting on entertainment business stories for newspapers. She worke for The New York Times until May 2002 and then starting working for The Los Angele Times thereafter.

3. At all times herein mentioned, Defendant ANTHONY PELLICANC ("Pellicano") was a resident of the County of Los Angeles, State of California. Defendan Pellicano is sued herein for acts he personally committed and as a co-conspirator who, at th direction of CLIENT DOE, LAW FIRM DOE and Does 1 through 31, acted to cause harn and injury to Plaintiff, to instill fear and apprehension and to illegally and unlawfully invad her privacy.

4. At all times herein mentioned, Defendant ALEXANDER PROCTOF ("Proctor") was a resident of the County of Los Angeles, State of California. Defendan Proctor is sued herein for acts he personally committed as well as a co-conspirator who, a the direction of Defendant Pellicano and Does 1 through 31 acted to cause harm and injur to Plaintiff, to instill fear and apprehension and to illegally and unlawfully invade he privacy.

5. At all times herein mentioned, Plaintiff is informed and believes and thereor alleges that Defendant MARK ARNESON ("Arneson") at all times relevant herein was a resident of the County of Los Angeles, State of California. In doing the acts hereinbelow alleged, Arneson was employed by the City of Los Angeles as a police officer with the Los Angeles Police Department ("LAPD.") Plaintiff is informed and believes and thereon allege that Defendant Arneson obtained and accessed private privileged information about Plaintif through his resources as a police officer and was part of the conspiracy to cause and instill fear and apprehension and cause harm and injury to Plaintiff.

http://webmail.aol.com/fmsgview.adp?folder=SU5CT1g=&uid=10471166 12/27/2004

http://www.thesmokinggun.com/archive/0601044busch3.html 12/26/2004

Case 1:05-cv-01015-FB Document 7 Filed 04/21/05 Page 23 of 28

6. At all times herein mentioned Defendant CITY OF LOS ANGELES was a governmental entity organized and existing under the laws of the State of California. The City of Los Angeles was the employer of Defendant Arneson and unknown DOE defendants Does 54 through 64. On June 4, 2003, Plaintiff first discovered that Defendant Arneson was involved in obtaining privileged and confidential information about Plaintiff and being involved in the conspiracy to harm her. Plaintiff thereafter timely filed a claim with the City of Los Angeles on December 3, 2003. That claim was denied on December 17, 2003; this complaint is therefore timely filed.

7. At all times herein mentioned, Defendant SBC TELECOMMUNICATIONS INC., formerly operating as Pacific Bell Telephone Company, collectively referred to herein as "SBC" is a corporation, doing business principally in the State of California and with a principal place of business in the State of California.

8. Defendants DOES 1 through 100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff at this time. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those defendants. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant refers also to all defendants sued under fictitious names.

9. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants, including all defendants sued under fictitious names, was the agent and employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of this agency or employment.

10. Defendants CLIENT DOE, LAW FIRM DOE and Does 1 through 31, are not yet known persons and/or entities who were involved in directing, organizing, commanding, employing and/or hiring individuals to engage in the unlawful and tortious conduct alleged

herein. Said Does 1 through 31, acted in concert and conspired with the remaining defendants to cause the harms to Plaintiff alleged herein.

11. Defendants Does 1 through 31, are not yet known persons and/or entities who engaged in the pattern and scheme of harassment, threats and intimidation, including certain direct threats and assaults on Plaintiff.

12. Defendants Does 32 though 42, are not yet known persons and/or entities who engaged in the pattern and scheme of unlawful and illegal conduct by participating in causing, creating and/or engaging in illegal wiretapping of Plaintiff's telephone lines and for the purposes of later causing harm and injury to Plaintiff, as well as invading the privacy of Plaintiff.

13. Defendants Does 43 through 53, are not yet known persons and/or entities who were employees, independent contractors and/or agents of Defendant SBC and who participated in, caused, created and/or engaged in illegal wiretapping of Plaintiff's telephone lines and for the purposes of later causing harm and injury to Plaintiff, as well as invading the privacy of Plaintiff.

14. Defendants Does 54 through 64, are not yet known persons who were employees, independent contractors and/or agents of Defendant City of Los Angeles and were who participated in, caused, created and/or engaged in illegal retrieving of personal information about Plaintiff, illegal wiretapping of Plaintiff's telephone lines, conduct of harassment and intimidation, who participated in, caused, created and/or conspired to cause harm and injury to Plaintiff, as well as invade the privacy of Plaintiff.

15. Defendants Does 65 through 100, are not yet known persons and/or entities whose involvement in the alleged conduct is not yet identified or known. Plaintiff is informed and believes that these unknown defendants were in some way responsible for the harm and injuries caused to Plaintiff.

16. Defendants Does 1 through 100, inclusive, acted in concerted and conspired with Defendants Pellicano, Proctor and Arneson to cause the damages and injuries to Plaintiff as herein alleged below.

## GENERAL FACTUAL ALLEGATIONS

17. The claims against known Defendants and the presently unknown Defendant described herein arise out of the Defendants Pellicano, Proctor, Arneson and Does 1 throug 100, intentionally and maliciously engaging in a scheme and course of conduct of threat intimidation, harassment and invasion of privacy for the purpose of deterring, hindering preventing and retaliating against Plaintiff for investigating and writing articles about th entertainment business.

18. The ongoing pattern and course of conduct engaged in by Defendants, and eacl of them, at the instigation of CLIENT DOE, LAW FIRM DOE and Does 1 through 31 includes the following:

(a) Wiretapping of Plaintiff's telephone lines. The date of commencement o said illegal wiretapping is not yet known; however, Plaintiff only became aware of illega wiretapping within the past two years;

(b) On or about June 20, 2002, at Plaintiff's residence in Los Angeles California, Plaintiff was threatened, harassed and intimidated when she discovered her ca windshield had been smashed. A note taped next to the hole in the windshield contained th words "STOP;" on the cracked window was an upside down tray with a dead fish and a re rose hidden underneath;

(c) On or about June 21, 2002, Plaintiff began receiving urgent telephon messages with a male voice on the other end, who asserted that there was a plan to blow u Plaintiff's car;

(d) In July 2002, two unknown males, apparently tracking Plaintiff's whereabouts, arrived at Plaintiff's parents' home, where Plaintiff had been staying, an threatened Plaintiff by their physical appearance;

(e) In August 2002, Plaintiff discovered that her computer had been hacke into and two months later her hard drive was destroyed by this tampering;

(f) On or about August 16, 2002, two males, driving a Mercedes with tinte windows and no license plate, drove at an excessive rate of speed in an attempt to run ove

Plaintiff who barely escaped. The vehicle then pulled up right next to Plaintiff and on occupant then leaned out of the window and made menacing gestures in an attempt to assault and [illegible] Plaintiff.

(g) In or about March 2003, Plaintiff's car was broken into and a small hol was drilled near the driver's visor.

19. The above conduct frightened, terrified and devastated Plaintiff. Having he telephones wiretapped, her computer hacked into and her life threatened, Plaintiff wa severely impacted in her ability to fully perform as a journalist.

20. Plaintiff also suffered monetary losses due to the damage to her property, t wit, her vehicle and computers.

## FIRST CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress)**

**(As Against Defendants Pellicano, Proctor, Arneson, Client Doe, Law Firm Doe and Does 1 through 100)**

21. Plaintiff realleges and reaffirms each and every allegation contained i Paragraphs 1 through 20 and incorporates the same as though fully set forth herein.

22. The course of conduct engaged in by Defendants, and each of them, includin the direct threats on her life, the assaults, intimidation and purposeful invasion of privacy to illegal wiretapping constitute extreme and outrageous conduct and are unacceptable to decent and law abiding society.

23. The conduct of Defendants, and each of them, was intentionally designed t cause immediate harm and injury to Plaintiff and instill fear and apprehension in Plaintiff

24. Defendants knew or should have known that the conduct alleged herein woul result in Plaintiff's severe emotional distress, and said conduct was perpetrated b Defendants with the intent to inflict, or with the reckless disregard of the probability o inflicting mental anguish and severe emotional distress upon Plaintiff.

25. As a direct result of Defendants' conduct, Plaintiff became emotionall traumatized, fearful, anxious, mentally anguished, severely depressed, and suffered seven

emotional distress, in a sum according to proof.

26. Defendants, and each of them, acted in conscious disregard of Plaintiff's wel being to constitute malice, oppression, and/or fraud, pursuant to California Civil Cod Section 3294. Plaintiff is therefore entitled to punitive damages in an amount sufficient t punish or set an example of Defendants.

SECOND CAUSE OF ACTION

(Assault)

(As Against Defendants Pellicano, Proctor, Arneson,

Client Doe, Law Firm Doe and Does 1 through 31 and 65 through 100)

27. Plaintiff realleges and reaffirms each and every allegation contained i Paragraphs 1 through 26 and incorporates the same as though fully set forth herein.

28. Defendants, and each of them, conspired to cause and instill immediate fea and apprehension in Plaintiff.

29. In doing the acts alleged above, Defendants, and each of them, as co conspirators, threatened to touch, harm and cause serious bodily injury to Plaintiff. Specifically, Plaintiff is informed and believes that Defendant Proctor at the request o Defendant Pellicano and Does 1 through 31, threatened Plaintiff with bodily harm when h left a dead fish and red rose on Plaintiff's smashed windshield. Plaintiff is further informe and believes that the unidentified males, Does 1 through 31 and/or 65-100 who attempted t instill fear of great bodily harm by following Plaintiff and making menacing gestures at her Plaintiff is informed and believes that all of the above conduct was carried out for th specific purpose of harming and/or instilling fear of immediate threat to Plaintiff.

30. Said conduct did in fact instill fear in Plaintiff that her life was in jeopardy, an as a direct result of Defendants' conduct, Plaintiff became emotionally traumatized, fearful anxious, mentally anguished, severely depressed, and suffered severe emotional distress, i a sum according to proof.

31. Defendants, and each of them, acted in conscious disregard of Plaintiff's well being to constitute malice, oppression, and/or fraud, pursuant to California Civil Code

Section 3294. Plaintiff is therefore entitled to punitive damages in an amount sufficient t punish or set an example of Defendants.

THIRD CAUSE OF ACTION

(Invasion of Privacy)

(As Against Defendants Pellicano, Proctor, Arneson, SBC,

Client Doe, Law Firm Doe and Does 32 through 53)

32. Plaintiff realleges and reaffirms each and every allegation contained i Paragraphs 1 through 20 and incorporates the same as though fully set forth herein.

33. As a result of the conduct of Defendants, and each of them, Plaintiff's privac rights guaranteed by common law and the California constitution were invaded in tha Defendant Does 43 through 53, using their authority and position as SBC employees engaged in the wiretapping of Plaintiff's telephone lines, individually and as part of a conspiracy with the other defendants. Does 32 through 42 also conspired and/or otherwis took action to violate Plaintiff's privacy rights.

34. Plaintiff did not consent to such wiretapping and upon discovery, such invasio of privacy has caused damage and injury to Plaintiff, including emotional distress and fear all in an amount to be proved at the time of trial.

35. SBC as the employer of Defendant Does 43 through 53 is responsible unde the theory of respondeat superior for the acts of its employees, who using their authority knowledge, access and ability as employees of SBC, engaged in unlawful wiretapping o Plaintiff's telephone lines.

36. The individual defendants, and each of them, acted in conscious disregard o Plaintiff's well being to constitute malice, oppression, and/or fraud, pursuant to Californi Civil Code Section 3294. Plaintiff is therefore entitled to punitive damages in an amoun sufficient to punish or set an example of the individually named Defendants.

///

///

///

FOURTH CAUSE OF ACTION

(Violation of Statute- Penal Code §632 and 637.2)

(As Against Defendants Pellicano, Proctor, Arneson, SBC, Client Doe, Law Firm Doe and Does 1 through 100)

37. Plaintiff realleges and reaffirms each and every allegation contained in Paragraphs 1 through 20 and 33 through 36 and incorporates the same as though fully set forth herein.

38. Defendants, and each of them, intentionally and without consent of Plaintiff tapped or made an unauthorized connection with Plaintiff's telephone lines, wire, cable and thereby listened, recorded, eavesdropped and intruded on Plaintiff's internal telephone communications in violation of Penal Code §632 and 637.2.

39. As a direct result of Defendants' conduct, Plaintiffs have sustained and will continue to sustain general and special damages in a sum to be proved at trial.

40. Pursuant to Penal Code §637.2 (a), Plaintiff is entitled to three times her actual damages, which are in excess of $5,000.00.

FIFTH CAUSE OF ACTION

(Violation of California Business & Professions Code Section 17200 et seq.)

(As Against Defendants Pellicano, Proctor, Arneson, SBC, Client Doe, Law Firm Doe and Does 1 through 100)

41. Plaintiff realleges and reaffirms each and every allegation contained in Paragraphs 1 through 40 and incorporates the same as though fully set forth herein.

42. This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to California Business and Professions Code section17200 et seq which provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

43. The actions described herein constitute a violation of California Business and Professions Code section 17200, et seq. Specifically, Defendants have engaged in acts in violation of law, including, but not limited to violations of Penal Code sections 632 and 632.7 and the California Constitution.

44. Defendants have intentionally and in an effort to harm and injure Plaintiff assaulted, threatened and caused Plaintiff extreme emotional distress by engaging in unlawful business practices and abuses of the telephone system and police information. Defendants should be required to disgorge any and all profits derived from these wrongful acts.

45. As a result of Defendants' violation of the California Unfair Practices Act Plaintiff is entitled to restitution damages, out of pocket expenses, and economic harm suffered.

SIXTH CAUSE OF ACTION

(Negligence)

(As Against Defendants SBC and Does 43 through 53 and 65 through 100)

46. Plaintiff realleges and reaffirms each and every allegation contained in Paragraphs 1 through 20 and incorporates the same as though fully set forth herein.

47. Defendants owed Plaintiff a duty of care to engage in lawful business activities and to ensure that its employees did not harm, injure or cause damage to customers such as Plaintiff.

48. Defendants breached said duty of care in that Defendants, and each of them, negligently hired, trained, instructed and supervised and disciplined their employees, whereby SBC employees unlawfully gained access to Plaintiff's private communications by illicit and improper means, for the purpose of harming Plaintiff

49. As a result of the negligence of the Defendants, and each of them, Plaintiff was injured in her health, strength and activities, sustaining injuries and damages in an amount according to proof.

///

///

< 1 2 3 4 5 6 7 8 9 10 11 12 13 > home | archive | contest | search

## SEVENTH CAUSE OF ACTION

(Negligence)

(As Against Defendants CITY OF LOS ANGELES and Does 65 through 100)

50. Plaintiff realleges and reaffirms each and every allegation contained i Paragraphs 1 through 20 and incorporates the same as though fully set forth herein.

51. Defendants owed Plaintiff a duty of care to maintain police information privat and secure and to refrain from disclosing information obtainable only by police departmer officials to members of the public.

52. Defendants breached said duty of care in that Defendants, and each of them negligently hired, trained, instructed and supervised and disciplined their employees whereby CITY OF LOS ANGELES employees, including Defendant Arneson used privat police information about Plaintiff, available only to police officials, and disclosed sai information to non-police personnel, including Defendants Pellicano and Proctor.

53. As a result of the negligence of the Defendants, and each of them, Plaintiff wa injured in her health, strength and activities, sustaining injuries and damages in an amoun according to proof.

///

///

///

///

///

///

///

///

///

///

///

///

## PRAYER

WHEREFORE, Plaintiff requests judgment as follows:

1. General damages, according to proof;
2. Special damages, according to proof;
3. Attorney fees, according to applicable statutes;
4. Treble damages, according to applicable statutes;
5. Punitive damages as to the First, Second, Third, Fourth and Fifth Causes of Action;
6. Costs of suit incurred herein; and
7. Such other and further damages and costs the Court deems appropriate and necessary.

Dated: May 28, 2004

GERAGOS & GERAGOS

By: [signature]
MATTHEW J. GERAGOS
Attorneys for Plaintiff
ANITA BUSCH



**CERTIFICATE OF SERVICE**

I, the undersigned, do certify that I served a copy of the foregoing, via U.S. Mail, by placing true and correct copies of the same in the Prisoner's mailbox, at FCI Elkton, with first class postage fully prepaid and affixed thereto, for deposit and delivery addressed as follows:

United States Attorney
AUSA Katya Jestin
One Pierrepont Plaza
Brooklyn, New York 11201

Executed this 15th day of April, 2005, pursuant to Title 28 U.S.C. Section 1746, at FCI Elkton, Ohio 44432-0010

Julius R. Nasso #67923-053
P.O. Box 10, FCI Elkton Unit "DB"
Lisbon, Ohio 44432-0010

Petitioner, pro se